IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL FIRE INSURANCE CO. OF HARTFORD : : : CIVIL ACTION : v. : : NO. 18-5379 : JOHNSON CONTROLS FIRE : PROTECTION LP : | |

## MEMORANDUM

**SURRICK, J.**                                                                                                               **AUGUST 23, 2019**

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6.) For the following reasons, Defendant's Motion will be denied.

## I. BACKGROUND

### A. Factual Background

Plaintiff National Fire Insurance Company of Hartford is the insurer of The Kendal Corporation. (FAC ¶¶ 6-7, Notice of Removal Ex. A, ECF No. 1-5.) The Kendal Corporation and its affiliate, Barclay Friends, are the owners and operators of an assisted living community located in West Chester, Pennsylvania. (*Id.* ¶ 8.) The community consists of several buildings, one of which, called the Woolman Building, was used as a residential personal care facility for the elderly. (*Id.* ¶ 9.) The Woolman Building was outfitted with an automatic fire sprinkler system in the living spaces, common areas, and attic portions of the building. (*Id.* ¶ 10.) Beginning in 2009, the sprinkler system was tested, maintained, inspected, and repaired by SimplexGrinnell. (*Id.* ¶ 12.) In 2014, SimplexGrinnell and Barclay Friends entered into a Service Solution Agreement that governed SimplexGrinnell's provision of fire protection system

monitoring services. (Service Agreement, FAC Ex. B.) By its terms, this Agreement terminated on December 31, 2016 (*id.*), and the parties did not negotiate a new agreement (FAC ¶ 16). However, SimplexGrinnell, which, by 2016, had merged with Defendant Johnson Controls Fire Protection LP, continued to perform fire protection system services at the community "pursuant to individual and separate transactions." (*Id.* ¶¶ 17-18.)[1]

One of these transactions, performed in May of 2017, involved SimplexGrinnell replacing a leaking "OS&Y valve" in the sprinkler system. (FAC ¶ 23.) The Complaint states:

> The 4" OS&Y valve was in a "series" of valves which could be used, separately or in combination with each other, to isolate portions or all of the fire suppression systems. In May, 2017, SimplexGrinnell's agents, representatives and employees closed several of the 4" OS&Y valves on either side of the leaking control valve in order to isolate the leaking valve, remove it and replace it. Upon completion . . . SimplexGrinnell failed to return all of the 4" OS&Y valves to their fully open positions, thereby preventing water from supplying the fire suppression systems protecting the Woolman Building.

(*Id.* ¶¶ 24-26.) The OS&Y valves were also "equipped with valve tamper switches that are intended to monitor whether the valves are maintained in proper position in order to assure the supply of water to the systems in the event of a fire." (*Id.* ¶ 27.) After SimplexGrinnell completed its repair work in May of 2017, it failed to return the valve tamper switch for at least one of the valves to its full open position. (*Id.* ¶ 28.) Because the valve tamper switch was not in its proper position, it did not signal that one of the OS&Y valves was not fully open. (*Id.* ¶ 29.)

In June and August of 2017, SimplexGrinnell returned to the Woolman Building to inspect the fire sprinkler system. (*Id.* ¶ 32; June Inspection, MTD Ex. B; August Inspection,

---

[1] Defendant does not dispute that the services rendered after the termination of the Service Solution Agreement were performed pursuant to individual and separate transactions, rather than the Service Solution Agreement. (*See generally* MTD, ECF No. 6 (discussing separate "contracts" governing each transaction after termination of the Service Solution Agreement).)

2

MTD Ex. C.) SimplexGrinnell reported in June that all sprinkler system main control valves and other valves were in the appropriate closed or open position, and that all control valves were sealed or supervised in the appropriate position. (June Inspection 2.) It also reported two deficiencies in the system but did not mention the control valves or tamper switches. (*Id.* at 6.) The report is signed by a SimplexGrinnell inspector. (*Id.* at 4, 6.) In the August inspection report, SimplexGrinnell again stated that all sprinkler system main control valves and other valves were in the appropriate closed or open position, and that all control valves were sealed or supervised in the appropriate position. (August Inspection 2.) Even though it reported another deficiency in the system, it did not discuss the control valves or tamper switches. (*Id.* at 7.) This report was also signed by a SimplexGrinnell inspector. (*Id.* at 4, 7.)

On November 16, 2017, a fire started in the Woolman Building. (FAC ¶ 42.) The building's smoke detectors activated and signaled the local fire and police departments. (*Id.* ¶ 44.) However, because SimplexGrinnell failed to properly re-open one of the OS&Y valves during its May 2017 repair work, the only water that reached the sprinkler heads was residual water in the pipes. (*Id.* ¶ 45.) The closed OS&Y valve prevented additional water from flowing to the sprinkler heads. (*Id.* ¶ 46.) Ultimately, "[t]he fire spread throughout the Woolman [B]uilding and adjacent connected structures," causing the deaths of four residents, "damages to the building and personal property and equipment located in the structures, loss of business income and extra expenses." (*Id.* ¶ 48; Resp. 2, ECF No. 8.)

Plaintiff had an insurance policy with The Kendal Corporation and Barclay Friends at the time of the fire and has made payments to them in excess of $10,600,000. (FAC ¶¶ 49, 51.)

## B. Procedural Background

Plaintiff filed a subrogation action against Defendant in the Philadelphia Court of Common Pleas on November 7, 2018, alleging that Defendant is responsible for the actions of SimplexGrinnell. (Compl., Notice of Removal Ex. A.) On December 11, 2018, Plaintiff filed a First Amended Complaint. (FAC.) Plaintiff brings claims against Defendant for negligence, gross negligence, and wanton and willful misconduct (Count I); negligent misrepresentation (Count II); intentional misrepresentation and fraud (Count III); and breach of implied warranty of workmanlike services (Count IV). (*Id.*) On December 12, 2018, Defendant removed the action to this Court. (ECF No. 1.) On January 9, 2019, Defendant filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (MTD, ECF No. 6.) On January 21, 2019, Plaintiff filed a Response in opposition to Defendant's Motion. (Resp.)

## II. LEGAL STANDARD

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Under Rule 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

Defendant seeks to dismiss the First Amended Complaint on two grounds. First, Defendant argues that the claims should be dismissed pursuant to the gist of the action doctrine because Plaintiff's claims sound in tort but the duties allegedly breached are in fact governed by the contracts between the parties. Second, Defendant argues that the misrepresentation and fraud claims should be dismissed pursuant to Rule 9(b) for lack of specificity. We address each of Defendant's arguments.

### A. Gist of the Action Doctrine

"Pennsylvania's gist of the action doctrine 'bars claims for allegedly tortious conduct where the gist of the conduct sounds in contract rather than tort.'" *Quandry Sols., Inc. v. Verifone, Inc.*, No. 07-097, 2007 U.S. Dist. LEXIS 15264, at *6 (E.D. Pa. Mar. 1, 2007) (quoting *Hospicomm v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 582 (E.D. Pa. 2004)). "The purpose of the doctrine is to 'preclud[e] plaintiffs from re-casting ordinary breach of contract claims into tort claims.'" *Id*. at *6-7 (quoting *eToll v. Elias/Savion Advert., Inc*., 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).

To determine whether a fraud claim is barred by the gist of the action doctrine, "the Court must first assess the alleged breach of the 'social duty imposed by the law of torts' (i.e., the fraud)," and then compare that breach to Defendant's contractual obligations under the parties' agreements. *SodexoMAGIC, LLC v. Drexel Univ.*, 333 F. Supp. 3d 426, 454 (E.D. Pa. 2018) (quoting *Bruno v. Erie Ins. Co*., 106 A.3d 48, 70 (Pa. 2014)). Where "the 'nature of the duty' alleged to be violated arises out of Defendants' contractual promises," the gist of the action

5

doctrine bars the fraud claim. *Downs v. Andrews*, 639 F. App'x 816, 821 (3d Cir. 2016) (quoting *Bruno*, 106 A.3d at 68). In *Bruno*, the court stated the following "general governing principle which can be derived from our prior cases":

> [O]ur Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. . . . If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno*, 106 A.3d at 68 (citations omitted). With the above principle in mind, the court went on to state "our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party." *Id.* at 69 (citations omitted).

In this case, Defendant argues that the duties it allegedly breached are the same duties as those governed by the contracts between the parties. To support its argument, Defendant attached a number of documents to its Motion purporting to represent the parties' agreements relating to each service performed at the Woolman Building in 2017 prior to the fire. The first of these documents is titled "Service Request" and states the "Scope of Work" and "Work Performed" at the home on May 9, 2017. (Service Request, MTD Ex. A.) The Scope of Work states: "4 OS&Y on backflow has corroded nipple sheered off on backside of valve." (*Id.*) The Work Performed states: "Replaced 4" OS&Y on backflow. All systems back in service." (*Id.*) There are signatures in the "Customer Acceptance" signature block on the form and in the

"SimplexGrinnell LP" signature block. (*Id.*) The next page of this exhibit lists various terms and conditions, including a limitation of liability and limited warranty. (*Id.*)

The remaining exhibits are reports of inspections that SimplexGrinnell performed, including the June and August 2017 sprinkler inspection reports discussed above (MTD Exs. B, C); a Dry Pipe Valve Trip Test Report dated August 2, 2017 (MTD Ex. C); and an Alarm & Detection Equipment Test Report dated August 2, 2017 (MTD Ex. D). Of those reports, the June and August sprinkler inspection reports contain terms and conditions similar to those attached to the Service Request. Defendant argues that we can consider these documents on a motion to dismiss because they are explicitly relied upon in the First Amended Complaint. *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 781 (W.D. Pa. 2000) ("Courts may consider a document that a defendant attaches as an exhibit to a motion to dismiss, provided that its authenticity is undisputed and that plaintiff's claims are based on the document." (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1198 (3d Cir. 1993)).

Plaintiff responds that the documents attached to the Motion are not contracts because they were given to Plaintiff's insureds after the services were performed, and their sole function was to memorialize the fact that SimplexGrinnell provided services. Plaintiff argues that, even if the documents can be considered contracts governing the services performed, the duties governed by the contracts are not the same as the duties that Defendant allegedly breached and that serve as the basis for this lawsuit.

At this stage in the proceedings, it is reasonable to conclude that the documents attached to Defendant's Motion are not contracts for the services performed because Plaintiff's insureds did not accept the terms outlined in the documents. "It is black letter law that in order to form an enforceable contract, there must be an offer, acceptance, consideration or mutual meeting of the

minds." *Jenkins v. Cty. of Schuylkill*, 658 A.2d 380, 383 (Pa. 1995) (citing *Schreiber v. Olan Mills*, 627 A.2d 806, 808 (Pa. 1993)). Determining whether a contract exists, and under what terms, requires an analysis of the parties' conduct and intent. *Schreiber*, 627 A.2d at 808 ("[W]hen seeking to enforce an agreement, one may look to the 'conduct' of the parties to ascertain the acceptance of the agreement."); *see also Great N. Ins. Co. v. ADT Sec. Servs.*, 517 F. Supp. 2d 723, 738 (W.D. Pa. 2007) (analyzing parties' course of dealing, on summary judgment, to determine whether terms produced after service partially rendered constitute part of contract). At this stage, Plaintiff need only plead facts sufficient to survive a motion to dismiss. Plaintiff maintains, and the documents themselves indicate, that the documents were given to Plaintiff's insureds only after the various services had been fully performed. Given this assertion and the lack of additional facts, it is certainly plausible that Plaintiff's insureds did not agree to be bound by the specific terms and conditions printed in those documents.

Even if discovery were to reveal facts showing that the terms and conditions of the attached documents governed the parties' transactions, the duties contracted for in those documents are not the same as the duties that Plaintiff alleges Defendant breached in this lawsuit. The Pennsylvania Supreme Court in *Bruno* held that "a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract." *Bruno*, 106 A.3d at 70 (citing *Zell v. Arnold*, 2 Pen. & W. 292 (Pa. 1830) (holding that "[t]he gist of an action on the case like the present, is not a failure to *perform*, but a failure to perform in a *workmanly manner*, which is a *tort*." (emphasis in original))). Rather, "[i]f the claim arises indirectly from the breach of a 'separate "collateral" duty to perform a contractual obligation with skill and diligence,' it is a tort action." *Endless*

8

*Summer Prods., LLC v. Mirkin*, No. 15-6097, 2016 U.S. Dist. LEXIS 25736, at *6 (E.D. Pa. Mar. 2, 2016) (citing *Bruno*, 106 A.3d at 63). If the duty to perform contractual obligations with skill and diligence is explicitly provided for in the contract, then an action for breach of that duty would properly be brought in contract rather than tort. *Greenspan v. ADT Sec. Servs.*, 444 F. App'x 566, 570-71 (3d Cir. 2011) (holding that gist of action doctrine barred negligence claim when duty allegedly breached was to replace defective smoke detector because contract explicitly imposed duty to maintain and repair smoke detectors); *Md. Cas. Co. v. Preferred Fire Prot., Inc.*, No. 14-245, 2014 U.S. Dist. LEXIS 118158, at *12-13 (W.D. Pa. July 17, 2014) (R. & R.) ("The essence of this action rests in contract; the duties breached, i.e., failing to adequately perform the repair and inspection and adequately preventing the system from freezing were, by Plaintiff's admission, obligations of the contract itself."), *adopted in relevant part*, 2014 U.S. Dist. LEXIS 117741 (W.D. Pa. Aug. 22, 2014).

In this case, the documents supplied by Defendants, if accepted as contracts, show that Defendant made the specific executory promises to replace a damaged OS&Y valve and perform a number of inspections. However, Plaintiff does not allege that Defendant failed to replace the damaged OS&Y valve or inspect the fire sprinkler system. Rather, the gist of Plaintiff's claims is that Defendant failed to fulfill those obligations with skill and diligence, and fraudulently misled Plaintiff. Plaintiff alleges that Defendant breached its duties by failing to, among other things, "properly open and position the 4" OS&Y valve after performing its work and services," failing to properly test the OS&Y valves and valve tamper switches, and by misrepresenting the condition of the OS&Y valves and tamper switches. (FAC ¶ 55.) The contracts do not speak to such duties. *Cf. Greenspan.*, 444 F. App'x at 570-71; *Md. Cas. Co.*, 2014 U.S. Dist. LEXIS 118158, at *12-13. Therefore, we are satisfied that tort law governs the duties that Defendant

allegedly breached. *See Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 870 F.3d 244, 256 (3d Cir. 2017) (holding that gist of the action doctrine did not bar plaintiff's fraud claim because defendant's "fraudulent misrepresentations and omissions . . . involve a 'broader social duty owed to all individuals,'" under *Bruno*); *N. Am. Elite Ins. Co. v. Victory Fire Prot., Inc.*, No. 17-3554, 2018 U.S. Dist. LEXIS 144157, at *10 (E.D. Pa. Aug. 24, 2018) ("The duty allegedly breached is not one 'to inspect' but to non-negligently carry out the inspection. . . . This is precisely the type of claim that the Supreme Court of Pennsylvania held is not barred by the gist of the action doctrine." (citing *Bruno*, 106 A.3d at 69)); *Telwell Inc. v. Grandbridge Real Estate Capital LLC*, 143 A.3d 421, 429 (Pa. Super. Ct. 2016) (stating that one party's withholding of information from another "sounds in tort as it implicates the 'societal duty not to affirmatively mislead or advise without factual basis.'" (quoting *Bruno*, 106 A.3d at 58)).

Defendant's request to dismiss Plaintiff's claims pursuant to the gist of the action doctrine will be denied.

### B. Specificity of Complaint

Next, Defendant argues that Plaintiff's claims for negligent misrepresentation, intentional misrepresentation, and fraud should be dismissed pursuant to Federal Rule of Civil Procedure 9(b) for lack of particularity.[2] Rule 9(b) states that, "[i]n alleging fraud or mistake, a party must

---

[2] The elements of common law fraud or intentional misrepresentation are: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 225 n.13 (3d Cir. 2008) (quoting *Colaizzi v. Beck,* 895 A.2d 36, 39 (Pa. Super. Ct. 2006)).
The elements of negligent misrepresentation are:

> (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation

state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Third Circuit has instructed that a plaintiff must plead with particularity the "circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85-86 (3d Cir. 2015) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)). A plaintiff ordinarily accomplishes this by pleading "the date, place or time of the fraud." *Silverstein v. Percudani*, 207 F. App'x 238, 240 (3d Cir. 2006). In addition, a plaintiff must allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Travelers Indem. Co.*, 620 F. App'x at 86.

The First Amended Complaint states that, in June and August of 2017, SimplexGrinnell "repeatedly represented and certified to Barclay Friends that the fire alarm and fire suppression systems were in working condition, despite the fact that the 4" OS&Y valve" and tamper switch were not operational. (FAC ¶ 34.) These "continual[] represent[ations]" that the systems were operational were made "following the numerous tests, inspection and maintenance" of the systems. (*Id.* ¶ 36.) Count II, for negligent misrepresentation, states that Defendant is liable for "misrepresent[ing] material facts with respect to the working condition and operation of the fire alarm system and fire suppression system at Barclay Friends." (FAC ¶ 58.) Plaintiff further

---

        to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

*Halper v. Jewish Family & Children's Serv.*, 963 A.2d 1282, 1286 (Pa. 2009) (citation omitted).

alleges that Defendant "knew of its misrepresentations, made the misrepresentations without knowledge as to their truth or falsity, or under circumstances in which SimplexGrinnell should have known of the falsity of the misrepresentations." (*Id.* ¶ 59.) Count III for intentional misrepresentation and fraud makes similar allegations and references both "representations and certifications" that Defendant made with the intention of misleading Plaintiff's insureds. (*Id.* ¶¶ 64, 66, 67.)

Defendant argues that the First Amended Complaint does not state "who made the representations, the content of an[y] such alleged representations, when specifically these alleged representations occurred, and to whom these alleged representations were made." (MTD 11.) In addition, Defendant argues that Plaintiff "fail[s] to plead the indispensable facts that a representation was 'knowingly false when made.'" (*Id.* at 12 (citing *Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476, 497 (M.D. Pa. 2013)).)

Initially, we note that it is unclear whether Rule 9(b) applies to claims for negligent misrepresentation. *Compare Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 142 (E.D. Pa. 2007) ("The particularity requirement of Rule 9(b) applies to claims of negligent misrepresentation." (citing Fed. R. Civ. P. 9(b))) *with Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 656 (E.D. Pa. 2016) (noting that "[t]he majority of decisions, particularly recent cases, have not applied Rule 9(b) to negligent misrepresentation cases" and citing, among others, *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 829 (E.D. Pa. 2016) (applying Rule 8 standard to claim of negligent misrepresentation because of "lack of consensus" as to whether Rule 9(b) applies)).

However, we need not engage in this debate because the documents Defendant attached to its own Motion satisfy the heightened standard with regard to all of Plaintiff's

12

misrepresentation and fraud claims.  Defendant's attachments memorialize the services that SimplexGrinnell performed at Barclay Friends in May, June, and August of 2017—the same time periods that Plaintiff alleges the work was done and the misrepresentations made.  The inspection reports state that all the control valves were in their proper positions and that the fire suppression systems were operational with the exception of several listed deficiencies.  Plaintiff has alleged that these specific statements were false.  The reports further state the name of the inspector who performed each inspection, on what date the inspection was performed, and where the inspection was performed.  These documents satisfy the Rule 9(b) standard.  *See Silverstein*, 207 F. App'x at 240.  Given that Defendant attached these documents to its own Motion, it is not plausible that Defendant is unaware of the misconduct with which it is charged.  *See Travelers Indem. Co.*, 620 F. App'x at 85-86.

Next, Defendant argues that Plaintiff has not pleaded with specificity that Defendant made its alleged misrepresentations with the requisite scienter.  However, Rule 9(b) explicitly does not require a plaintiff to allege a defendant's state of mind with specificity.  *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also Fleetwood Servs., LLC v. Complete Bus. Sols. Grp.*, 374 F. Supp. 3d 361, 376 (E.D. Pa. 2019) (refusing to dismiss fraud claim for lack of specificity when complaint stated that defendant had "intent to defraud").  As quoted above, Plaintiff has alleged generally that Defendant acted with the requisite state of mind for each of Plaintiff's claims.  The cases cited by Defendant for the proposition that Plaintiff is required to plead additional facts are not comparable to this case.  The complaints in those cases did not include even general factual allegations of scienter.  *See Roth*, 919 F. Supp. 2d at 497 (dismissing negligent misrepresentation claim for lack of specificity with regard to scienter because "Plaintiffs supply only conclusory

13

allegations, contending that because the statements ultimately 'proved to be false', they 'had to have been knowingly false when made.'"); *Mackay v. Donovan*, 747 F. Supp. 2d 496, 504 (E.D. Pa. 2010) (dismissing fraud claim for lack of specificity with regard to scienter because plaintiff "simply state[d] legal conclusions"); *Smith v. Office of Servicemembers Grp. Life Ins.*, No. 97-5862, 1997 U.S. Dist. LEXIS 18547, at *9 (E.D. Pa. Nov. 24, 1997) (dismissing fraud claim for lack of specificity with regard to scienter because "plaintiffs have brought this action solely on the suspicion that defendant has defrauded them").

Accordingly, Defendant's request to dismiss Plaintiff's misrepresentation and fraud claims for lack of particularity will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion will be denied. An appropriate Order follows.

                                          **BY THE COURT:**

                                          **R. BARCLAY SURRICK, J.**